[No. D055331. Fourth Dist., Div. One. Apr. 16, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER PRIETO HERNANDEZ, Defendant and Appellant.

1328

## COUNSEL

Jerry D. Whatley, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Angela Borzachillo and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HALLER, J.**—A jury convicted Christopher Prieto Hernandez of first degree murder on a theory of premeditation and deliberation. On appeal, Hernandez asserts the standard jury instruction on provocation (CALCRIM No. 522) was incomplete and misleading as it relates to second degree murder. We reject this contention and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On the evening of July 26, 2003, Hernandez had an argument with his girlfriend. After the argument, he left their home on foot. He had a gun with him, and as he left their residence he fired the gun into the ground.

About 10:00 p.m. that same night, Eleazar Verdugo and Mary Quiroz (Mary) were sitting in Verdugo's car in the parking area of the duplex where Verdugo lived. According to Mary, a short while earlier Hernandez had seen them in the neighborhood and asked Verdugo for a ride to Riverside. Verdugo had agreed, and she and Verdugo were sitting in the car waiting for Hernandez to arrive.[1] While they were waiting in the car, they were joined by three other men, including Mary's brother, victim Alfonso Quiroz (Alfonso). Alfonso and the two men were standing outside the car talking to Mary and Verdugo. About 10 to 15 minutes later, Mary saw Hernandez walk by on the street. She lost sight of him, but then saw him again walking in the area.

As Hernandez was walking by the group the second time, there was a verbal exchange between Hernandez and Alfonso. According to Mary, Alfonso had been drinking beer and was in a good mood. Alfonso walked towards Hernandez and, speaking in a normal voice, said, " '[Hernandez], is that you?' " " 'What's up fool?' " " 'Come here.' " One of the men with Alfonso asked, " 'Who's that? Who's that?' " Hernandez continued walking by, and as he passed Alfonso he stated in Spanish that he did not feel like talking. Alfonso (who was not fluent in Spanish) asked Mary what Hernandez had said, and Mary responded, " 'I don't know. Let him go.' " Hernandez continued walking away and Alfonso stopped walking towards him. When Hernandez was about 20 feet away from Alfonso, Hernandez turned around and shot Alfonso several times, causing Alfonso to fall to the ground. Mary yelled, " '[Hernandez], what are you doing? That's my brother.' " Mary, Verdugo, and one of the men with Alfonso testified that they did not observe any threatening conduct or display of weapons before the shooting.

An autopsy revealed that Alfonso sustained five separate gunshot wounds. He was shot three times in his front torso/abdominal area, one time in his upper back, and one time in his thigh. After the shooting, Hernandez fled the state, but a few years later turned himself in to the police.

Testifying on his own behalf, Hernandez stated that on the night of the shooting he had missed the bus to Riverside and was looking for Verdugo to ask for a ride so he could sell a gun he had purchased to make money. When he arrived at Verdugo's home, he called out Verdugo's name. Three gang members came out from around the car area and started saying insulting things to him in an aggressive tone. Hernandez recognized Alfonso and did not know why he was insulting him. The three men kept coming closer to him, and they were making head signals to each other and gesturing with their hands. One of the men came around behind him, and then the men "were practically on [him]." Hernandez felt frightened and thought they were going to harm him. He started running away, and as he was running he turned

---

[1] Verdugo, however, testified that no one had asked him for a ride to Riverside.

and fired the gun without looking back. He testified he was not pointing the gun at any particular person; he was firing where he thought the men were; and he just wanted the men not to come close to him. He stated he did not intend to kill anyone and he shot because he was afraid.

The prosecution's theory of the case was that Hernandez committed first degree, premeditated murder. The defense theory was that Hernandez acted in reasonable self-defense supporting acquittal, or in unreasonable self-defense supporting a voluntary manslaughter verdict. The jury found Hernandez guilty of first degree murder.

## DISCUSSION

In addition to requesting instructions on self-defense and imperfect self-defense, Hernandez requested an instruction on provocation to support a verdict of second, rather than first, degree murder. Hernandez requested, and the trial court gave, the standard jury instruction on provocation, CALCRIM No. 522. Hernandez did not request that the instruction be clarified or amplified.

On appeal, Hernandez asserts that CALCRIM No. 522 is incomplete and misleading because (1) it fails to specify that provocation can negate the premeditation and deliberation necessary for first degree murder; (2) it instructs the jury that it may decide the significance of the provocation; and (3) it fails to instruct the jury that provocation insufficient for manslaughter may be sufficient for second degree murder.[2]

■ The trial court has a sua sponte duty to instruct the jury on the general principles of law relevant to the issues raised by the evidence. (*People v. Rogers* (2006) 39 Cal.4th 826, 866 [48 Cal.Rptr.3d 1, 141 P.3d 135].) This sua sponte duty encompasses instructions on lesser included offenses that are supported by the evidence. (*Id.* at pp. 866–867.) Additionally, even if the court has no sua sponte duty to instruct on a particular legal point, when it does choose to instruct, it must do so correctly. (*People v. Castillo* (1997) 16 Cal.4th 1009, 1015 [68 Cal.Rptr.2d 648, 945 P.2d 1197].) Once the trial court adequately instructs the jury on the law, it has no duty to give clarifying or amplifying instructions absent a request. (*People v. Mayfield* (1997) 14 Cal.4th 668, 778 [60 Cal.Rptr.2d 1, 928 P.2d 485].)

---

[2] We decline the Attorney General's request to find a forfeiture of the instructional issue on appeal because defense counsel did not object during trial. If the trial court provided misleading instructions to the jury, this error would affect defendant's substantial rights. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1315, fn. 43 [96 Cal.Rptr.3d 512, 210 P.3d 1119]; *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087 [78 Cal.Rptr.3d 186].)

In reviewing a claim that the court's instructions were incorrect or misleading, we inquire whether there is a reasonable likelihood the jury understood the instructions as asserted by the defendant. (*People v. Cross* (2008) 45 Cal.4th 58, 67–68 [82 Cal.Rptr.3d 373, 190 P.3d 706].) We consider the instructions as a whole and assume the jurors are intelligent persons capable of understanding and correlating all the instructions. (*People v. Ramos, supra*, 163 Cal.App.4th at p. 1088.)

To evaluate Hernandez's claim of instructional error, we first summarize the law pertaining to the gradations of homicide culpability, and then consider the instructions given to the jury in this case.

■ First degree murder is an unlawful killing with malice aforethought, premeditation, and deliberation. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181 [91 Cal.Rptr.3d 106, 203 P.3d 425].) Malice may be express (intent to kill) or implied (intentional commission of life-threatening act with conscious disregard for life). (*Ibid.*) Second degree murder is an unlawful killing with malice, but without the elements of premeditation and deliberation which elevate the killing to first degree murder. (*Ibid.*) To reduce a murder to second degree murder, premeditation and deliberation may be negated by heat of passion arising from provocation. (*People v. Fitzpatrick* (1992) 2 Cal.App.4th 1285, 1295–1296 [3 Cal.Rptr.2d 808].) If the provocation would not cause an average person to experience deadly passion but it precludes the defendant from subjectively deliberating or premeditating, the crime is second degree murder. (*Ibid.*) If the provocation would cause a reasonable person to react with deadly passion, the defendant is deemed to have acted without malice so as to further reduce the crime to voluntary manslaughter. (*People v. Lasko* (2000) 23 Cal.4th 101, 108 [96 Cal.Rptr.2d 441, 999 P.2d 666].)

Here, the jury was instructed that murder is a killing with malice aforethought, and that if the jury decided defendant committed murder it must decide whether it is murder of the first or second degree. (See CALCRIM Nos. 520, 521.) In the language of CALCRIM No. 521, the jury was instructed that first degree murder requires deliberation and premeditation; deliberation means a decision to kill after a careful weighing of the considerations for and against this choice; premeditation means a decision to kill before commission of the act that caused death; and a *"decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated."* (Italics added.) The jury was then instructed on the theory of provocation in the language of CALCRIM No. 522, as follows: *"Provocation may reduce a murder from first degree to second degree* and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide. If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the

crime was first or second degree murder. Also, consider the provocation in deciding whether the defendant committed murder or manslaughter." (Italics added.)

Hernandez asserts that CALCRIM No. 522 is inadequate because it does not specifically inform the jury that provocation is relevant to determine whether the defendant killed without premeditation and deliberation. He points out that the CALJIC instruction on provocation (CALJIC No. 8.73) included this point, stating: "If the evidence establishes that there was provocation which played a part in inducing the unlawful killing of a human being, but the provocation was not sufficient to reduce the homicide to manslaughter, *you should consider the provocation for the bearing it may have on whether the defendant killed with or without deliberation and premeditation.*" (Italics added; see *People v. Lee* (1994) 28 Cal.App.4th 1724, 1732 [34 Cal.Rptr.2d 723].)[3]

■ Preliminarily, we note that an instruction on provocation for second degree murder is a pinpoint instruction that need not be given sua sponte by the trial court. (*People v. Rogers, supra*, 39 Cal.4th at p. 878 [discussing CALJIC No. 8.73's provocation instruction]; *People v. Mayfield, supra*, 14 Cal.4th at p. 778 [provocation instruction is pinpoint instruction because it "relates particular facts to an element of the charged crime and thereby explains or highlights a defense theory"].) In *Rogers*, the court evaluated the potential for error when the jury is instructed on provocation as it relates to voluntary manslaughter, but is not instructed on provocation as it relates to second degree murder. (*People v. Rogers, supra*, 39 Cal.4th at pp. 879–880.) The *Rogers* court concluded that the omission of a provocation instruction for second degree murder is not misleading. The court reasoned that "the jury is told that premeditation and deliberation is the factor distinguishing first and second degree murder" and the manslaughter instruction "does not preclude the defense from arguing that provocation played a role in preventing the defendant from premeditating and deliberating; nor does it preclude the jury from giving weight to any evidence of provocation in determining whether premeditation existed." (*Id.* at p. 880.)

■ As reflected in *Rogers*, the fact that a trial court is not required to instruct on provocation for second degree murder *at all* supports that it is not

---

[3] An earlier version of the CALJIC instruction was similar to CALCRIM No. 522, stating: "When the evidence shows the existence of provocation that played a part in inducing the unlawful killing of a human being, but also shows that such provocation was not such as to reduce the homicide to manslaughter, and you find that the killing was murder, *you may consider the evidence of provocation for such bearing as it may have on the question of whether the murder was of the first or second degree.*" (CALJIC No. 8.73 (1979 rev.) (4th ed. 1979), italics added; see *People v. Rogers, supra*, 39 Cal.4th at p. 878; *People v. Mayfield, supra*, 14 Cal.4th at p. 778.)

misleading to instruct on provocation without explicitly stating that provocation can negate premeditation and deliberation. Although CALCRIM No. 522 does not expressly state provocation is relevant to the issues of premeditation and deliberation, when the instructions are read as a whole there is no reasonable likelihood the jury did not understand this concept. Based on CALCRIM No. 521, the jury was instructed that unless defendant acted with premeditation and deliberation, he is guilty of second, not first, degree murder, and that a rash, impulsive decision to kill is not deliberate and premeditated. Based on CALCRIM No. 522, the jury was instructed that provocation may reduce the murder to second degree murder.

In this context, provocation was not used in a technical sense peculiar to the law, and we assume the jurors were aware of the common meaning of the term. (See *People v. Rowland* (1992) 4 Cal.4th 238, 270–271 [14 Cal.Rptr.2d 377, 841 P.2d 897].) Provocation means "something that provokes, arouses, or stimulates"; provoke means "to arouse to a feeling or action[;] . . . to incite to anger." (Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 938; see *People v. Ward* (2005) 36 Cal.4th 186, 215 [30 Cal.Rptr.3d 464, 114 P.3d 717] ["provocation . . . is the defendant's emotional reaction to the conduct of another, which emotion may negate a requisite mental state"].) Considering CALCRIM Nos. 521 and 522 together, the jurors would have understood that provocation (the arousal of emotions) can give rise to a rash, impulsive decision, and this in turn shows no premeditation and deliberation.

We are satisfied that, even without express instruction, the jurors understood that the existence of provocation can support the absence of premeditation and deliberation. Thus, without a request for further instruction, the trial court was not required to amplify the instructions to explain this point. (Cf. *People v. Cole* (2004) 33 Cal.4th 1158, 1211–1212 [17 Cal.Rptr.3d 532, 95 P.3d 811] [trial court has no sua sponte duty to give amplified instruction stating that provocation can negate intent to torture for murder by torture].)

Hernandez also challenges the portion of CALCRIM No. 522 that states: "The weight and *significance* of the provocation, if any, are for you to decide." (Italics added.) He argues that telling the jury that it should decide the "significance" of the provocation allowed the jury to arbitrarily reject the evidence of provocation. There is no reasonable likelihood the jury interpreted the instruction in this fashion. Weight means "the relative importance or authority accorded something"; significance means "the quality of being important." (Merriam-Webster's Collegiate Dict., *supra*, at pp. 1336, 1088.) Read in context, the reference to "weight and significance" merely tells the jury that it should decide the strength and importance of the provocation; i.e., was the defendant provoked enough to create a doubt as to whether the offense was deliberate, premeditated first degree murder rather than a rash,

impulsive second degree murder? The use of the term "significance" does not suggest the jury could arbitrarily reject the provocation evidence, as asserted by Hernandez.

 Hernandez additionally asserts that CALCRIM No. 522 is deficient because it fails to instruct the jury that provocation that is insufficient to reduce the crime to manslaughter may nevertheless be sufficient to reduce the crime from first degree to second degree murder.[4] It appears that Hernandez is positing that absent this clarification, the jury might have thought that if it rejected the provocation evidence for manslaughter, it should not consider the provocation evidence for second degree murder. The contention is unavailing. CALCRIM No. 522 instructs the jury to "consider the provocation in deciding whether the crime was first or second degree murder" and "consider the provocation in deciding whether the defendant committed murder or manslaughter." Thus, the instruction plainly states the jury should consider provocation for *both* second degree murder and manslaughter. There is nothing in the instruction that suggests the jury might have failed to fully consider the provocation evidence for second degree murder based on a rejection of the evidence for manslaughter.[5]

Hernandez's citation to *People v. Valentine* (1946) 28 Cal.2d 121 [169 P.2d 1] does not show CALCRIM No. 522 is deficient. The *Valentine* court concluded that the overall effect of the instructions given by the trial court was to emphasize that provocation can reduce a murder to manslaughter, while ignoring the principle that provocation can reduce a murder to second degree murder. (*Valentine*, at pp. 130–132; see *People v. Rogers, supra*, 39 Cal.4th at pp. 879–880.)[6] CALCRIM No. 522, which explicitly states that provocation can reduce a murder from first degree to second degree, creates no such potential for error.

 The trial court did not err by instructing the jury with CALCRIM No. 522.

---

[4] This information was included in CALJIC No. 8.73.

[5] The lack of error in this particular case is further supported by the fact that, apart from the brief reference to manslaughter in the CALCRIM No. 522 provocation instruction, the jury was not otherwise instructed on a heat of passion/provocation theory of voluntary manslaughter. Thus, the jury would not have focused on the provocation evidence for purposes of manslaughter while failing to consider it for purposes of second degree murder.

[6] The instructions in *Valentine* included erroneous statements that intent to kill is sufficient to establish first degree murder and that the defendant had the burden to prove mitigating circumstances for second degree murder. (*People v. Valentine, supra*, 28 Cal.2d at pp. 130–132.)

## DISPOSITION

The judgment is affirmed.

Nares, Acting P. J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 21, 2010, S182676.