Filed 8/30/21  P. v. Jimenez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DAVID PEREZ JIMENEZ,<br><br>        Defendant and Appellant. | F079476<br><br>(Super. Ct. No. 4002651)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Dawna Reeves, Judge.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted David Perez Jimenez of first degree murder of his wife, rejecting alternative theories that he was guilty of a lesser offense based on provocation.  On appeal, Jimenez argues that there was (1) no substantial evidence of premeditation or

deliberation and (2) the trial court's jury instructions misled the jury as to the applicable test for provocation.  We reject these arguments and affirm the judgment.

## STATEMENT OF THE CASE

The Stanislaus County District Attorney filed an information charging Jimenez with one count of premeditated murder with personal use of a knife.  (Pen. Code, § 187, subd. (a); § 12022, subd. (b)).[1]  The jury found Jimenez guilty of first degree murder and that he personally used a knife.  Consequently, the court sentenced him to 25 years to life for premeditated murder, plus one year consecutive for the knife-use enhancement.

## BACKGROUND

Around November 2016, Jimenez, his wife, and their three daughters moved into an apartment in Ceres, California shared by approximately ten people.  Jimenez separated from his wife around January 2017 and moved to Santa Rosa, California.  Jimenez traveled from Santa Rosa to Ceres to see his daughters about once a week.  In February 2017, Jimenez's wife began dating another man.

A few days before February 26, 2017,[2] Jimenez arrived in Ceres and stayed in the apartment, sleeping in his wife's bedroom.  On the night of either February 24 or 25, Jimenez argued with his wife about a broken cell phone, telling her to have her new boyfriend purchase her a new phone.  On February 26, messages were sent from Jimenez's wife's new cell phone to her boyfriend, including a picture of her lying on the bed with Jimenez.

During the late afternoon of February 26, the apartment was nearly empty except for Jimenez, his wife, and a female roommate, E.I.  Jimenez sat in the living room.  His wife was in her bedroom, and E.I. was in the other bedroom across the hall.  Jimenez told his oldest daughter to go to a store to get food with her two sisters and gave them money.

---

[1] All statutory references are to the Penal Code.

[2] References to dates are to dates in 2017 unless otherwise stated.

The two older sisters left, but his youngest daughter remained outside, playing with E.I.'s daughter. At some point thereafter, Jimenez moved to his wife's bedroom. E.I. then heard Jimenez's wife yelling, "Let's talk for our daughters. Let's fix things. Let's have a conversation for our daughters." Jimenez replied that if his wife would not be with him, then she would not be with anybody. Jimenez's wife immediately began yelling for E.I. to help her.

Hearing the cry for help, E.I. ran to the bedroom door. E.I. opened it and saw Jimenez standing over his wife with a clean knife in his right hand, above his right shoulder and his head, with his arm bent, the knife pointed toward the victim. The victim lay with her back on the bed, a blanket or comforter covering her from the waist down. The victim struggled with Jimenez, holding his forearms with her arms. E.I. observed no blood at the scene and recognized the knife as a kitchen knife normally kept in the kitchen. The victim asked E.I. for help, and E.I. told Jimenez to stop, leave, and not hurt the victim.

E.I.'s daughter and the victim's youngest daughter came into the apartment at the sound of E.I.'s screaming. E.I. took the girls with her and fled the apartment, running to a neighbor's house. E.I. left the door to the victim's bedroom open. On her way out, E.I. observed Jimenez's oldest daughter returning from the store with a plate of food. That trip had taken approximately thirty minutes.

Once the police arrived, they kicked open the now locked door to the victim's bedroom and found Jimenez on the bed, covered in blood, with the kitchen knife next to him. His wrists were lacerated, and he sustained a stab wound to the chest. The victim was also lying on the bed, covered in blood, unresponsive, and without a pulse.

The victim died from blood loss due to seven stab wounds: two on the left side of her face, two on the right side of her neck, one on her right chest, one on her left chest, and one on the back of her head. The victim also sustained superficial cuts on the back of her left hand and her right forearm while attempting to protect herself. An abrasion to the

3.

right knuckle area indicated a possible offensive wound sustained while attempting to hit Jimenez.

## DISCUSSION

### I.  Sufficiency of the evidence

Jimenez challenges the sufficiency of the evidence supporting his first degree murder conviction.  Specifically, he argues the jury lacked sufficient evidence to find premeditation and deliberation because, while he concedes evidence of motive, he contends there was no evidence of planning activity or an exacting manner of killing.  We conclude sufficient evidence supported the conviction.

### A.  Standard of review

We uphold the sufficiency of the evidence in support of a conviction if the record, viewed in the light most favorable to the judgment, contains substantial evidence that is " 'reasonable, credible, and of solid value' " from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Morales* (2020) 10 Cal.5th 76, 88 (*Morales*).)  We presume in support of the judgment " ' " 'the existence of every fact the trier of fact could reasonably deduce from the evidence.' " ' " (*Ibid*; *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.)

This standard also applies when the conviction rests on circumstantial evidence. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263 (*Virgil*); *People v. Kraft* (2000) 23 Cal.4th 978, 1053; *People v. Redd* (2014) 228 Cal.App.4th 449, 457.)  Though a jury must acquit a defendant if it finds the circumstantial evidence supporting a possible conviction susceptible to an interpretation suggesting innocence, " ' "it is the jury, not the appellate court, that must be convinced of the defendant's guilt beyond a reasonable doubt." ' " (*Virgil*, *supra*, at p. 1263.)  " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*Ibid*.)

**B.     Relevant homicide law**

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).)  First degree murder is "willful, deliberate, and premeditated." (§ 189, subd. (a).)  Conduct is premeditated if " ' " ' "considered beforehand" ' " ' " and deliberate if " ' " ' "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." ' " ' " (*Morales*, *supra*, 10 Cal.5th at p. 88.)  " ' "An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse." ' " (*Ibid*; *People v. Anderson* (1968) 70 Cal.2d 15, 24—34 (*Anderson*).)  The extent of the reflection, not the duration of time, is the true test of premeditation and deliberation, for " 'thoughts may follow each other with great rapidity, and cold, calculated judgment may be arrived at quickly ….' " (*People v. Potts* (2019) 6 Cal.5th 1012, 1027 (*Potts*), citing *People v. Thomas* (1945) 25 Cal.2d 880, 900.)

" 'Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 942.)  To reduce a murder to second degree, "premeditation and deliberation may be negated by heat of passion arising from provocation." (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1332 (*Hernandez*).)  "If the provocation would not cause an average person to experience deadly passion but it precludes the defendant from subjectively deliberating or premeditating, the crime is second degree murder.  [Citation.]  If the provocation would cause a reasonable person to react with deadly passion, the defendant is deemed to have acted without malice so as to further reduce the crime to voluntary manslaughter." (*Ibid.*)  Here, the jury returned a verdict of first degree murder because it found premeditation and deliberation.

5.

Generally, three categories of evidence establish premeditation and deliberation: (1) planning activity — "facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing"; (2) motive — "facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim"; and (3) manner of killing — "facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason'. . . ." (*Anderson*, *supra*, 70 Cal.2d at pp. 26—27.)

*Anderson, supra,* 70 Cal.2d 15 provides three instances where a court will usually find premeditation and deliberation: (i) evidence of all three of the above categories; (ii) extremely strong evidence of planning activity; or (iii) evidence of motive in conjunction with either evidence of planning activity or evidence of the manner of killing. (*Id.* at pp. 26—27.)

However, in the years since *Anderson, supra,* 70 Cal.2d 15, our Supreme Court has " 'emphasized that its guidelines are descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 324.) "*Anderson* provides 'a framework to aid in appellate review,' but it does not 'define the elements of first-degree murder or alter the substantive law of murder in any way.' " (*Morales*, *supra*, 10 Cal.5th at p. 89, citing *People v. Perez* (1992) 2 Cal.4th 1117, 1125.)

### C.   Analysis

In this case, Jimenez concedes there was sufficient evidence of motive. He was angry and jealous because of his estranged wife's new boyfriend. However, he contends there must be evidence of an exacting manner of killing or of planning activity in addition to evidence of motive for there to be sufficient evidence of premeditation and

deliberation. This argument is based on the *Anderson* factors. But as we have mentioned, our Supreme Court has explained the *Anderson* factors are only descriptive. (*Morales*, *supra*, 10 Cal.5th at p. 89.) Construing the evidence in the light most favorable to the judgment, we believe a reasonable juror could find Jimenez's conduct was deliberate and premeditated. We therefore affirm the murder conviction on this ground.

A reasonable jury could infer premeditation and deliberation from Jimenez's retrieving the knife. The jury could infer the knife was in the kitchen because it was normally kept there, and therefore Jimenez had to go to the kitchen to obtain the knife before going to the bedroom. The jury could then find that the time it took for Jimenez to arm himself and walk to the bedroom was sufficient to allow for premeditation and deliberation. (*Potts*, *supra*, 6 Cal.5th at p. 1027 [" 'thoughts may follow each other with great rapidity, and cold, calculated judgment may be arrived at quickly' "].) The jury could also infer Jimenez waited until the apartment was mostly empty to attack the victim, even sending his daughters away to get food, which would evidence planning activity.

Additionally, E.I. told Jimenez to stop, leave, and not harm the victim as Jimenez and his wife struggled over the knife that Jimenez held and pointed down at her. The jury could infer from the victim's resistance and E.I.'s interference that Jimenez had the opportunity to reflect on his course of action before the killing was accomplished. Consequently, the jury could reasonably conclude Jimenez enacted a preconceived design to take his wife's life via stabbing.

Though Jimenez argues that some or all of these facts are consistent with a contrary finding, when viewed in the light most favorable to the judgment, a reasonable jury could conclude Jimenez deliberately and with premeditation killed his wife. That the facts could be reconciled with a contrary finding does not permit us to contradict the jury's judgment. (*Virgil*, *supra*, 51 Cal.4th at p. 1263.) Consequently, we conclude that the jury's finding of first degree murder was supported by sufficient evidence.

## II. Jury instructions

Jimenez also argues the trial court's jury instructions were misleading because they implied provocation must be objectively reasonable to raise a reasonable doubt as to premeditation and deliberation. Stated differently, he contends the jury was not adequately instructed on the subjective provocation that will negate premeditation and deliberation and make a killing second degree murder rather than first degree murder. (See *People v. Jones* (2014) 223 Cal.App.4th 995, 1000—1001 (*Jones*); *Hernandez, supra*, 183 Cal.App.4th at p. 1333.) We disagree.

When evaluating a claim that jury instructions misled the jury, we independently review the challenged instructions in the context of all given instructions to determine whether there is a reasonable likelihood the instructions caused the jury to misapply the law in violation of the Constitution. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) We assume that jurors are capable of understanding and correlating all instructions given. (*People v. Martinez* (2019) 34 Cal.App.5th 721, 728.) We also give the instructions a reasonable, rather than a technical, meaning and interpret them to support the judgment if possible. (*Ibid.*)

The jury was instructed with the standard instructions for degrees of homicide (CALCRIM No. 520), first degree murder (CALCRIM No. 521), provocation (CALCRIM No. 522), and voluntary manslaughter (CALCRIM No. 570). CALCRIM No. 522 read in full: "Provocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. Also, consider the provocation in deciding whether the defendant committed murder or manslaughter."

CALCRIM No. 570 on voluntary manslaughter provided in relevant part: "A killing that would otherwise be murder is reduced to voluntary manslaughter if the

defendant killed someone because of a sudden quarrel or in the heat of passion. [¶] The defendant killed someone because of a sudden quarrel or in the heat of passion if: [¶] 1. The defendant was provoked; [¶] 2. As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; [¶] AND [¶] 3. The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment. [¶] …. [¶] It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment."

Jimenez did not request any clarification or modification of any of the instructions. Nevertheless, he argues that because the jurors were (correctly) instructed that the provocation necessary to reduce a killing from murder to voluntary manslaughter must be viewed from an objective perspective, and must be sufficient to provoke a reasonable person of average disposition, they would have inappropriately applied the same reasonable person standard to the provocation that reduces a killing to second degree murder, which is actually dependent upon the defendant's subjective mental state and not what a reasonable person would do. He is incorrect.

Here, there is no reasonable likelihood the jury concluded the provocation required to negate malice and reduce a homicide to voluntary manslaughter is the same as the provocation that determines whether a murder is of the first or second degree. CALCRIM No. 570, pertaining solely to voluntary manslaughter, properly specifies provocation in that context must be objectively reasonable: "a person of average disposition" would have been provoked "in the same situation and knowing the same facts." Read with CALCRIM No. 522, which does not contain any such requirements for provocation reducing a killing to second degree murder, the only reasonable conclusion

9.

to be reached is that the provocation precluding a finding of premeditation is something different from (and less than) that which would preclude a finding of malice. That is, the jury necessarily understood that if some provocation exists, the killing must be second degree murder unless it finds the provocation was objectively reasonable under the circumstances. Otherwise, there would be no need to separately instruct the jury to consider provocation in the context of second degree murder as distinct from the provocation that will reduce a killing to voluntary manslaughter. Considering the instructions as a whole, a reasonable juror would have understood that something less than objectively reasonable provocation could preclude a finding of premeditation and justify a verdict of second degree murder. (*Martinez, supra,* 34 Cal.App.5th at p. 728 [we assume jurors are capable of correlating instructions].)

Jimenez acknowledges that *Jones, supra,* 223 Cal.App.4th 995 and *Hernandez, supra,* 183 Cal.App.4th 1327 undermine his argument. His attempts to distinguish these authorities do not persuade us.

We agree with *Jones, supra,* 223 Cal.App.4th 995 that CALCRIM Nos. 520, 521, 522, and 570 are correct statements of law unlikely to mislead a jury. (*Id.* at pp. 999— 1001.) When taken together, "[t]hey accurately inform the jury what is required for first degree murder, and that if the defendant's action was in fact the result of provocation, that level of crime was not committed. CALCRIM Nos. 521 and 522, taken together, informed jurors that 'provocation (the arousal of emotions) can give rise to a rash, impulsive decision, and this in turn shows no premeditation and deliberation.' " (*Id.* at p. 1001)

Because these four instructions are adequate statements of law unlikely to mislead a jury, we also agree with *Hernandez, supra,* 183 Cal.App.4th 1327, 1334 and *People v. Rogers* (2006) 39 Cal.4th 826, 878—879 (*Rogers*) that an instruction regarding provocation for second degree murder is a pinpoint instruction that need not be given sua sponte by the trial court. Consequently, Jimenez's failure to request a pinpoint

10.

instruction forfeited his claim to a more specific instruction on provocation for second degree murder. (*Hernandez*, at p. 1333.)

We reject Jimenez's argument that *Rogers, supra,* 39 Cal.4th 826 is inapplicable here because the *Rogers* jury was instructed on first degree murder with CALJIC 8.20, not CALCRIM No. 521. This is a superficial distinction because CALJIC 8.20 and CALCRIM No. 521 are analogues that express the same concept, differing only in language. CALJIC 8.20 provides, in relevant part, that a killing "under a sudden heat of passion or other condition precluding the idea of deliberation" is not first degree murder, whereas CALCRIM No. 521 reads, in part, that "[a] decision to kill made rashly, impulsively, or without careful consideration is not deliberated and premeditated." The *Rogers* court held that the omission of a provocation instruction for second degree murder is not misleading because "the jury is told that premeditation and deliberation is the factor distinguishing first and second degree murder" and the manslaughter instruction "does not preclude the defense from arguing that provocation played a role in preventing the defendant from premeditating and deliberating; nor does it preclude the jury from giving weight to any evidence of provocation in determining whether premeditation existed." (*Rogers*, *supra*, 39 Cal.4th at p. 880.)

In this case, the jury was also told that premeditation and deliberation distinguish first and second degree murder, and the manslaughter instruction likewise did not prevent the jury from applying evidence of provocation to determine whether premeditation existed. Consequently, there is no substantive distinction between *Rogers, supra,* 39 Cal.4th 826 and this case.

The jury instructions were correct.

## DISPOSITION

The judgment is affirmed.

11.

SNAUFFER, J.

WE CONCUR:


HILL, P. J.


POOCHIGIAN, J.