Filed 6/21/23  P. v. Blake CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D079677 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS311768) |
| ALBERT LEE BLAKE, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Timothy R. Walsh, Judge.  Affirmed.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Steve Oetting and Daniel John Hilton for Plaintiff and Respondent.

After the manager of a fast-food restaurant refused to accept his counterfeit $100 bill, Albert Lee Blake went to his car, donned sunglasses and a hoodie, armed himself with a 9-mm semiautomatic pistol, and then returned—where he calmly waited in line until the customer in front of him finished placing her order. When the cashier said, "Who is next," Blake stepped up to the counter and opened fire, killing the manger and wounding three other employees. A jury convicted him of first degree premeditated murder and three counts of attempted murder, which the jury also found were "willful, deliberate and premeditated."[1] Blake's sole argument on appeal is that the trial court erroneously refused to instruct with CALCRIM No. 522, which states that provocation may reduce a murder from first to second degree.

In explaining the manner in which provocation can reduce first degree to second degree murder, the Supreme Court has emphasized that the provocation must occur under circumstances which negate the possibility that the defendant planned the killing in advance. (*People v. Wickersham* (1982) 32 Cal.3d 307, 329 (*Wickersham*).) Here, even viewing the evidence in the light most favorable to Blake, jurors could only conclude that he planned to kill, making any instruction on provocation inapplicable. As the trial judge commented at sentencing, "I've handled many violent cases, and this is one of the most callous and senseless I've ever seen." Accordingly, we affirm the judgment.

---

[1] The jury also convicted him of cruelty to a child by inflicting injury. (Pen. Code, § 273a, subd. (b).)

## FACTUAL AND PROCEDURAL BACKGROUND

One early evening in November 2019, Blake parked his blue Dodge Charger with distinctive aftermarket wheels in the parking lot of a fast-food restaurant. Surveillance video showed he was wearing blue shorts and a white tank top when he went inside. Blake tried to pay for his order with a $100 bill. The manager, Maribel, suspecting it was counterfeit, swiped the bill with a special pen and determined it was fake. She told Blake they did not accept $100 bills, and suggested he go to the nearby convenience store to get change and return.

Blake was angry and yelled at Maribel, asking why she "did not like him" and was treating him "bad[ly]." He left the restaurant but returned about five minutes later, where he remained for some 17 minutes before leaving again.

It was now 5:21 p.m. About 30 minutes had elapsed since Blake first entered the restaurant. He moved his car, parking it closer to the exit. Surveillance video shows that he opened the car's trunk and then walked back to the driver's side, where he leaned into the car several times.

At 5:25 p.m., Blake went back inside the restaurant. But now he was wearing a hoodie, dark sunglasses, and a beanie bearing a Chargers logo. His hands were inside the hoodie's front pocket while he waited in line to order food. A 12-year-old girl was in line in front of him. After placing her order she stepped aside. It was only the fourth day on the job for the cashier, Mario. He said, " 'Who is next?' "

Blake answered that question with gunfire. He approached the counter, drew a semiautomatic 9-mm pistol from his hoodie's pocket, and shot Mario at close range, blowing his arm off at the elbow. Mario picked his arm

up off the floor and held it to his chest.  Blake fired again, hitting him in the abdomen.

Taking a few steps to the left, he then shot Maribel in the back.  Next, he fired rounds towards the drive thru area, then calmly walked out of the restaurant and drove off.  Maribel died.  Mario and two other employees were wounded but survived.

## DISCUSSION

A.    *Additional Background*

First degree murder is "an unlawful killing with malice aforethought that is willful, premeditated and deliberate."  (*People v. Delgado* (2017) 2 Cal.5th 544, 571.)  Second degree murder is an unlawful killing with malice aforethought, but without premeditation and deliberation. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.)

Provocation can affect culpability for a homicide in two distinct ways. Subjective provocation can reduce a murder from first to second degree where the provocation "would not cause an average person to experience deadly passion but it preclude[d] the defendant from subjectively deliberating or premeditating."  (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1334 (*Hernandez*).)  Provocation can also reduce a second degree murder to voluntary manslaughter if the provocation is such that it would cause an ordinary person to react under a heat of passion.  (*Ibid.*)

Here, defense counsel asked the court to instruct on both variations on provocation.[2]  With respect to provocation that reduces murder to second degree, she asked for CALCRIM No. 522, which states:

_____

[2]    On appeal Blake does not challenge the ruling denying his request for voluntary manslaughter instructions.

4

"Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide.

"If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. [Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.]"

Counsel maintained the instruction was warranted because "there was an argument over the money, [Blake] became upset, so upset that he then went out to his vehicle, retrieved a firearm and came back in and, essentially, shot at the employees."

Citing *Wickersham, supra,* 32 Cal.3d 307, the court refused to give this instruction, ruling that the evidence was not sufficient "to justify a jury's determination that [Blake] had formed the intent to kill as a direct response to the provocation and acted immediately . . . ." The trial judge noted that Blake's movements were "very calm and deliberate" when he initially left the restaurant. Blake then "[b]acked his car out of that location and moved it to, what can only be perceived, a location that would allow for a more expeditious departure" and positioned it "towards the exit." Commenting, "[t]hat to me, alone, shows deliberation, contemplation, and calm decision-making," the court found it significant that Blake "changed his appearance" from having a white tank top to wearing a hooded sweatshirt. He then "went to the trunk of his car, the evidence will lead one to believe, to arm himself." "This was not rapid. This took some time." The evidence, the court observed,

was that Blake waited until in line until it was his turn, and when he approached the counter "started shooting people."[3]

B.   *The Court Correctly Refused to Give CALCRIM No. 522*

" 'In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether "there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt." ' [Citation.] 'On appeal, we likewise ask only whether the requested instruction was supported by substantial evidence — evidence that, if believed by a rational jury, would have raised a reasonable doubt as to' an element of the crime in question." (*People v. Mitchell* (2019) 7 Cal.5th 561, 583.)

The term "provocation" in CALCRIM No. 522, has its ordinary, nontechnical meaning. (*Hernandez, supra*, 183 Cal.App.4th at p. 1334.) To warrant giving the instruction, the evidence of provocation must "justify a jury determination that the accused had formed the intent to kill as a *direct* response to the provocation and had acted *immediately . . . .'*" (*Wickersham, supra*, 32 Cal.3d at p. 329, italics added.)

Here, Blake asserts the jury could have reasonably found he was provoked because he and Maribel argued "for almost 20 minutes," he was "angered by the refusal of service, and believed [Maribel] had singled him out because of a personal dislike for him, resulting in [his] public humiliation when his $100 was refused as 'fake.' " Because Blake is African American and the victims were Hispanic, counsel further contends that Blake "may have felt Maribel's refusal was based on his race." He notes that in closing

---

[3]   The court also denied Blake's request for instructions on heat-of-passion voluntary manslaughter. That ruling is not challenged on appeal.

argument, even the prosecutor stated the motive was "[m]oney and pride"—that is, anger at Maribel's refusal to accept his $100 bill.

We agree with Blake's assertion that there was ample evidence he was provoked—in the sense that he was subjectively angered by the refusal to accept payment with his counterfeit money. But to support giving CALCRIM No. 522, more than that was required. Provocation, by itself, merely explains motive, that is—*why* Blake killed. But to reduce murder to second degree, the provocation must be coupled with evidence showing *a lack of premeditation and deliberation*.

For example, suppose that after Maribel rejected the $100 bill, Blake angrily lunged over the counter and immediately strangled her. Contrast that with a hypothetical where after having his $100 bill rejected, Blake goes to work and the movies. The next day, still angry and holding a grudge, he returns to kill Maribel. The provocation—anger at having the $100 bill rejected—is the same in both hypotheticals. But the first would warrant a CALCRIM No. 522 instruction and the second clearly would not. The distinguishing fact is whether there was an *immediate* deadly reaction to the provocation or other evidence suggesting an absence of premeditation. The immediacy of the reaction allows a factfinder to conclude that the provoked defendant did not deliberate before he killed. (See *Wickersham*, *supra*, 32 Cal.3d at p. 329; see also *People v. Fenenbock* (1996) 46 Cal.App.4th 1688, 1705 ["The *Wickersham* court explained that the evidence of provocation must 'justify a jury determination that the accused had formed the intent to kill as a *direct* response to the provocation and had acted *immediately*' "].)[4]

_____

[4]    Blake relies on *People v. Wright* (2015) 242 Cal.App.4th 1461 to suggest there is no immediacy requirement where a defendant claims that he or she did not premeditate and deliberate a killing due to some provocation. But as *Wright* makes clear in distinguishing *Wickersham*, its discussion "address[es]

7

Immediacy allows a jury to infer that the arousal of emotion—that is, provocation—gave rise to a rash, impulsive act, which is the antithesis of deliberation. And this is where Blake's argument fails. Here, the evidence compelled the conclusion that Blake, although angry he may have been and subjectively provoked, premeditated and deliberated before he killed. In the course of nearly a half-hour, he:

- moved his car to facilitate escape;
- donned a disguise, dark sunglasses, and a beanie;
- retrieved a 9-mm semiautomatic pistol from the trunk of his car;
- patiently waited in line behind another customer until it was his turn to approach the counter; then
- fired five rounds at close range.

And there was no interaction between Blake and any of his victims in the moments leading up to the shooting that added to the earlier provocation.

The sum total of these circumstances compel a conclusion that Blake planned the killing in advance. No other conclusion is reasonable on this record, even resolving all evidentiary conflicts and doubts in his favor. Therefore, the trial court correctly refused to give CALCRIM No. 522. (See *People v. Singleton* (1987) 196 Cal.App.3d 488, 492 [trial courts are "duty-bound to avoid instructions which are not justified by the facts of the case"].)

In urging the opposite conclusion, Blake emphasizes evidence that he and Maribel argued "for almost 20 minutes" when he first presented the $100

---

provocation in the context of a long period of provocatory conduct" (*Wright,* at p. 1491) and not, as in this case, a single provocatory incident. In any event, the lack of immediacy in this case is but one fact that, taken together with other significant factual circumstances, support our conclusion there was insufficient evidence from which a reasonable jury could find that provocation by the victim prevented Blake from committing premeditated murder.

bill, there was "yelling," and a witness described his demeanor as "angry" or "mad." But as just explained, we accept all that as true for purposes of analyzing the issue. Nevertheless, the argument fails because *after* that encounter, Blake waited a significant period of time, moved his car, disguised his appearance, got a gun, and stood in line before shooting.

Blake also complains that the trial court "conflated the more stringent requirements of provocation to negate malice" with the subjective standard that alone is enough to warrant giving CALCRIM No. 522. The record does not support that assertion.

Before ruling, the court acknowledged that defense counsel had requested the jury be instructed with *both* CALCRIM No. 522 and No. 570 (voluntary manslaughter, heat of passion). The trial judge expressly recognized these were "separate considerations" and "provocation as it may related to the effect on the degree of murder is separate and distinct from provocation as it may affect consideration of a reduction from murder to manslaughter . . . ." After giving counsel time to conduct legal research and doing more himself, the trial judge *again* stated, "they are two separate issues."

The court summarized the law regarding the type of objectively reasonable provocation required for voluntary manslaughter, and then distinguished that from the subjective provocation that would warrant giving CALCRIM No. 522. Addressing first the request to give voluntary manslaughter (heat of passion) instructions, the judge stated that a person who incites a physical encounter is not entitled to claim he was provoked into using deadly force. After some additional comments, the court concluded, "So as it relates to anything with reducing this charge from a murder to a

9

voluntary manslaughter, I don't think there is provocation, and I've made my record on that."

Turning next to provocation sufficient to negate premeditation and deliberation, the court cited *Wickersham* and stated, "[T]here is nothing immediate about [Blake's] actions here." Thus, contrary to Blake's contentions, the record shows that the trial court understood the distinction between these two types of provocation, and its ruling reflected it. The judge applied the law of provocation in the only manner the evidence allowed. There was no error.

## DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.