Filed 1/29/25  P. v. Kness CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALLEN REED KNESS,<br><br>    Defendant and Appellant. | 2d Crim. No. B332542<br>(Super. Ct. No. F000278122)<br>(San Luis Obispo County) |

Allen Reed Kness appeals a postevidentiary hearing order denying his petition for resentencing pursuant to Penal Code[1] section 1172.6.  Kness contends the evidence is insufficient to support a second degree murder conviction.  We affirm.

---

[1] Further unspecified statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL HISTORY[2]

In 1998, 45-year-old Richard Wall lived with Blaine Richardson, who was 22 years old and stronger than Wall. Wall was physically weak because he suffered from emphysema and liver disease. Wall and Richardson argued frequently.

Kness did not know Wall but was good friends with Richardson. Kness and Richardson spent the day together drinking. Richardson told Kness that Wall was an "asshole" and that he was going to "take [Wall] out." Kness said he would "back [Richardson] up." The two of them walked back to Wall's apartment, where Wall was drinking beer and watching television.

Richardson and Kness continued to drink at the apartment. Kness told Wall, "Don't fuck with this guy or I'll kill you." At some point in the evening, Richardson began arguing with Wall and stabbed him several times in the bedroom.

After Wall was killed, Kness placed salad tongs on Wall's back and urinated on him. Kness and Richardson took money from Wall's wallet, bought more beer, and returned to the apartment where they drank and watched a video before passing out. Richardson and Kness left the apartment the next morning.

Wall's body was discovered by a neighbor and manager of the apartment complex. He had been stabbed six times with two different knives and had blunt force injuries on his scalp and torso. The fatal injury was a stab wound to Wall's neck. Police discovered two knives in the kitchen that could have produced Wall's injuries. One of the knives had a bent blade and appeared

---

[2] As no new evidence was submitted, the facts are taken directly from our previous unpublished opinion, *People v. Kness* (March 1, 2023, B317045) [nonpub.opn.] (*Kness III*).

to have been washed.  Kness's fingerprints were found on a drinking glass in the kitchen, but not on the knives; Richardson's fingerprints were found throughout the apartment.

Kness was arrested the next day, and Richardson turned himself in.  Richardson initially told the police that Kness had killed Wall.  A police officer placed Kness and Richardson together in a patrol car and recorded their conversation.  Richardson said he turned himself in for questioning because he "figured [the police] would stick [Kness] with everything."  Kness responded, "If you remember right, I was the one that was trying to get you out of it.  Like before we passed out, I was trying to dump the body."

Kness also said that "pathologists" already examined the apartment and the police already knew "what went down."  He also said the police already had their fingerprints in the apartment and "they pretty much know . . . how it happened or what happened."  Richardson replied, "There's only two missing elements.  I asked for the knife, you got em and I killed him.  I swear to God, that's exactly what happened, and you were just standing there, remember?  That's exactly what happened."  Kness responded, "Hm."  Richardson continued, "And I said get me a different one Allen, you got me a different one.  Then you like kicked him, put tongs on him, did weird things, you peed on him [and] then you told me to pee on him."  Kness said, "[I]t's pretty much cut and dried . . . you know, we're going to prison [¶] . . . [¶] [c]ause now, that you told them that I did bring you the knife, I'm accessory to murder."

Richardson pleaded guilty to second degree murder and admitted he personally used a knife.  At Kness's trial, Richardson testified that Kness had been in the living room when Richardson

3

stabbed Wall in the bedroom.  Richardson acknowledged Kness had done strange things after the killing, such as urinating on the body, but testified that Kness did not bring him the knives and did not otherwise participate in the murder.

At Kness's jury trial, the trial court instructed the jury that Kness could be convicted of murder on two theories: first, as a direct aider and abettor, and second, under the natural and probable consequences doctrine with the target crimes of brandishing a deadly weapon, simple assault, or assault with a deadly weapon.  The prosecution argued both theories of murder.

The jury found Kness not guilty of first degree murder, but it convicted him of second degree murder (§§ 187, subd. (a), 189, subd. (b)).  It did not specify whether the conviction was based on direct aiding and abetting or the natural and probable consequences doctrine.  Kness was sentenced to 15 years to life in state prison.

The instant appeal is the fourth appeal before us.  In *Kness I*, we affirmed the judgment in an unpublished decision.  (*People v. Kness* (May 7, 2001, B139989) [nonpub.opn.] (*Kness I*).)  Following the enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), Kness filed a resentencing petition alleging he was prosecuted for and convicted of murder under a theory of felony murder or murder under the natural and probable consequences doctrine and could not now be convicted of murder.  The trial court denied the petition on constitutional grounds.  In *Kness II*, we reversed and remanded to the trial court for further proceedings consistent with section 1172.6.  (*People v. Kness* (August 24, 2020, B299645) [nonpub. opn.] (*Kness II*).)  On remand, the trial court denied the petition after holding an evidentiary hearing.  In *Kness III*, we reversed and

4

remanded the matter once again because the trial court erroneously applied the wrong standard of proof at the evidentiary hearing.

On remand from *Kness III*, the trial court conducted a new evidentiary hearing under section 1172.6, subdivision (d)(3) at which neither party presented new evidence nor filed new briefs. The trial court denied the petition, finding the evidence proved beyond a reasonable doubt that Kness directly aided and abetted implied malice murder.

## DISCUSSION

Kness contends there was insufficient evidence to support a second degree murder conviction. We disagree.

Senate Bill 1437 amended the felony murder rule and the natural and probable consequences doctrine to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.) Senate Bill 1437 also established resentencing relief for eligible defendants. (§ 1172.6.) If a defendant makes a prima facie showing of eligibility for relief, the court must issue an order to show cause and hold an evidentiary hearing. (*Id.*, subds. (c) & (d).) At the hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by changes to Section 188 or 189." (*Id.*, subd. (d)(3).) The court "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law . . . . The court may also consider the procedural history of the case recited in any prior appellate

5

opinion. . . .  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (*Ibid.*)

On appeal, we review the trial court's findings for substantial evidence.  (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)  "Our job on review is different from the trial judge's job in deciding the petition.  While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt."  (*Ibid.*)  We review the record in the light most favorable to the trial court's finding and determine if there is substantial evidence to find the defendant guilty beyond a reasonable doubt.  (*Ibid.*)  "We will not reverse unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision."  (*People v. Didyavong* (2023) 90 Cal.App.5th 85, 97.)

Here, the trial court found Kness was guilty of second degree murder as a direct aider and abettor to implied malice murder.  Murder is committed with implied malice when "the killing is proximately caused by ' "an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' "  (*People v. Knoller* (2007) 41 Cal.4th 139, 143.)  Direct aiding and abetting implied malice murder remains a valid theory of second degree murder following Senate Bill 1437.  (*People v. Reyes* (2023) 14 Cal.5th 981, 990.)  To be liable for an implied malice murder, " 'the direct aider and abettor must, by words or conduct, aid the commission of the

6

life-endangering act . . . . The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life.' " (*Id.* at p. 991, italics omitted.)

Substantial evidence supports the trial court's finding that Kness directly aided and abetted implied malice murder. Before the murder Kness expressed his support and said he would "back [Richardson] up" after Richardson said that he was going to "take [Wall] out." Later at the apartment, Kness threatened Wall's life, telling him, "Don't fuck with [Richardson] or I'll kill you." Richardson then got into an argument with Wall in the bedroom and stabbed him multiple times, with one fatal knife injury causing Wall's death. During a later conversation in a patrol car, Kness did not deny assisting Richardson by bringing him the knives. From this evidence, the trial court could have reasonably found that Kness's words and conduct—particularly, bringing Richardson knives—aided Richardson in the life-endangering act of stabbing Wall. The court could also infer that Kness knew of Richardson's intent to kill Wall based on Richardson's statements earlier in the day and his request for the knives. And, it could further infer that when Kness retrieved the knives, he intended to aid Richardson in the stabbing, knew Richardson's act was dangerous to Wall's life, and acted with conscious disregard for Wall's life. (See *People v. Schell* (2022) 84 Cal.App.5th 437, 443 [direct aider and abettor guilty of murder where the evidence showed the defendant knew he was aiding and abetting in a violent attack, knew dangerous weapons were being used, and intended to stop the victim from escaping or defending himself].)

7

Kness's conduct after the murder was further evidence of his state of mind. Kness placed salad tongs on Wall's back and urinated on him. He and Richardson then took Wall's money, continued to drink, and passed out until the next morning all while Wall was dead in the other room. During a conversation in the patrol car, he never denied his role in the murder. Instead, he stated, "[N]ow, that you told them that I did bring you the knife, I'm accessory to murder." (See *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599 [circumstances relevant to determining whether a defendant aided and abetted murder include presence at the crime scene and failure to prevent it, companionship and conduct before and after the crime, and motive].)

Kness contends that the trial court's finding of implied malice murder was unreasonable because the court's factual findings could only support a first degree murder conviction, which the jury rejected. He asserts that "had the jury accepted the factual scenario set forth in the trial court's factual findings, it would necessarily have found appellant guilty of willful, deliberate and premeditated murder" and no reasonable jury could have returned a verdict other than first degree murder. We reject this contention. First degree murder is an unlawful killing with malice aforethought, premeditation, and deliberation. (§ 189, subd. (a); *People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1332.) Second degree murder is the unlawful killing with malice aforethought, but without the additional elements of premeditation and deliberation. (§§ 187, subd. (a), 188; *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 102-103.) A first degree murder conviction is proper when the perpetrator killed as a result of careful thought and weighing of consideration,

deliberate judgment or plan, or preconceived plan. (*People v. Anderson* (1968) 70 Cal.2d 15, 26.)

Here, the jury could have reasonably found the evidence was insufficient to prove that Richardson and Kness developed a preconceived and deliberate plan to kill Wall but was sufficient to prove implied malice murder. A reasonable factfinder could have found that the killing, which occurred after an argument, was a result of a rash and unconsidered action rather than a deliberate plan and weighing of considerations. Thus, nothing about the trial court's findings or its conclusion that the evidence supported second degree murder was unreasonable.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.


9

Craig B. van Rooyen, Judge

Superior Court County of San Luis Obispo

_____

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.