Filed 7/15/22  P. v. Gallegos CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANDREW CHARLES GALLEGOS,<br><br>    Defendant and Appellant. | D079154<br><br><br>(Super. Ct. No. FVI19001057) |

APPEAL from a judgment of the Superior Court of San Bernardino County, John P. Vander Feer, Judge.  Affirmed.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Eric Swenson and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Appellant.

Andrew Charles Gallegos hated that his sister, Britney, was dating an African American, Ron B. He called Ron "nigga," told Britney she had "jungle fever," and referred to African Americans as " 'pinche mayates' "— Spanish for "fucking nigger." In an unprovoked attack after stating, "You're going to regret dating my sister," Gallegos stabbed Ron in the heart, killing him.

A jury convicted Gallegos of first degree murder, found that he personally used a deadly and dangerous weapon, and determined the murder was a hate crime within the meaning of Penal Code section 422.75, subdivision (a).[1] The court sentenced Gallegos to four years plus 50 years to life in prison.

On appeal, Gallegos contends his conviction should be reversed because of two instructional errors. First, he asserts the court should have instructed the jury with CALCRIM No. 522—that provocation may reduce a murder from first to second degree. Because his attorney did not request this instruction and the court had no sua sponte duty to give it, Gallegos seeks to avoid forfeiture by characterizing the omission as ineffective assistance of counsel. Second, he contends the hate crime enhancement should be reversed because the court gave "conflicting" instructions on whether the People were required to prove motive.

We reject these arguments and affirm the judgment.[2] There was no substantial evidence of provocation. And although better practice would have

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Gallegos also asks that we independently examine certain documents the trial court viewed in camera to determine if they contain exculpatory evidence. We address that issue in part C, *post*.

been to modify CALCRIM No. 370, the pattern instruction on motive, when viewed in their entirety the jury instructions were not misleading.

FACTUAL AND PROCEDURAL BACKGROUND

Gallegos is Hispanic and since the age of 13 has been a member of El Monte Flores, a Hispanic criminal street gang that "targets" African Americans. Gallegos's sister, Britney, had been dating Ron for several weeks when Gallegos arrived in town. Gallegos "hated" Ron because he was African American; he did not like that Britney was dating " 'a black guy.' "[3]

A few weeks before killing Ron, Gallegos told a fellow attendee at an Alcoholics Anonymous meeting that stabbing a person in the middle of the chest was a quick method of killing. He also talked about having to "get his hands dirty before and said something about 'pinche mayates.' "

In October 2014 after smoking methamphetamine, Gallegos and a friend walked to a neighborhood market where Britney and Ron were buying cigarettes and soda. Martina, an African American friend of Britney's, was also there. As the five of them were walking away from the market, Martina stumbled. Believing Gallegos intentionally tripped her, Britney yelled that she could not stand him, and he should leave them alone. Gallegos replied that Ron would regret dating Britney, and that she would thank him later.

As Britney and Ron walked on the other side of the street, suddenly "[o]ut of nowhere" Gallegos sprinted towards them. According to Britney, Gallegos said nothing but "just charged at" Ron. Ron told Britney to "[s]tand back" and "square[d] up" preparing to fight. But before a single punch was thrown, Gallegos stabbed Ron in the heart. He quickly collapsed and died at the scene as Gallegos fled, running.

---

[3] Ron had tattoos indicating he was a member of Pasadena Denver Lane, a "Bloods" criminal street gang comprised of African American males.

3

A. *Defense Counsel Did Not Render Ineffective Assistance By Failing to Ask the Court to Instruct on Provocation to Reduce Murder to Second Degree.*

First degree murder is "an unlawful killing with malice aforethought that is willful, premeditated and deliberate." (*People v. Delgado* (2017) 2 Cal.5th 544, 571.) Second degree murder is an unlawful killing with malice aforethought, but without premeditation and deliberation. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.)

Provocation that is insufficient to negate malice and reduce murder to manslaughter, but that raises a reasonable doubt as to whether the defendant killed with premeditation and deliberation, can reduce what would otherwise be a first degree premeditated murder to second degree murder. (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1332 (*Hernandez*).) Unlike the objective heat-of-passion inquiry in the context of voluntary manslaughter, the test of provocation sufficient to preclude deliberation and premeditation is entirely subjective. It only requires a finding that the defendant's subjective mental state was such that he did not deliberate and premeditate before deciding to kill. (*People v. Fitzpatrick* (1992) 2 Cal.App.4th 1285, 1295–1296.)

Here, Gallegos asserts that the trial court should have instructed the jury with CALCRIM No. 522, which states in part:

> "Provocation may reduce a murder from first degree to second degree. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder."

But defense counsel did not ask the court to give this instruction, and there is no duty to give it sua sponte. (*People v. Hardy* (2018) 5 Cal.5th 56, 99.)

4

On appeal, Gallegos concedes that his attorney's failure to request this instruction precludes raising the issue for the first time on appeal. He nonetheless asks that we overlook the forfeiture because " 'justice requires it' " and "to forestall inevitable litigation of the claim" by a habeas petition. We reject this argument. The failure to request a pinpoint instruction on the effect of provocation to reduce murder from first degree to second forfeits the claim on appeal. (*People v. Jones* (2014) 223 Cal.App.4th 995, 1001.) Rules of forfeiture " ' "encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had." ' " (*People v. Saunders* (1993) 5 Cal.4th 580, 590.) Gallegos points to no extraordinary circumstances warranting an exception here.

Anticipating this might be our conclusion, Gallegos maintains that defense counsel "lacked any tactical reason" not to request CALCRIM No. 522 and thus rendered ineffective assistance. Asserting "[t]he whole thrust of the defense" was that he acted "impulsively and rashly," Gallegos contends "[a] provocation instruction would have fit in perfectly" with the defense theory "and would have highlighted for the jury that it could consider [his] agitation in determining whether the homicide stemmed from premeditation and deliberation." His argument, however, ignores the fact that evidence of "provocation," not "agitation," is the basis for the instruction.

To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.) "On direct appeal, a finding of deficient performance is warranted where '(1) the record affirmatively discloses counsel had no rational tactical

5

purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' [Citation.] '[W]here counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

The term "provocation" in CALCRIM No. 522, has its ordinary, nontechnical meaning. (*Hernandez, supra,* 183 Cal.App.4th at p. 1334.) " 'The evidentiary premise of a provocation defense is the defendant's emotional reaction *to the conduct of another*, which emotion may negate a requisite state.' " (*People v. Nelson* (2016) 1 Cal.5th 513, 541, italics added.) "[P]rovocation (the arousal of emotions) can give rise to a rash, impulsive decision, and this in turn shows no premeditation and deliberation." (*Hernandez*, at p. 1334.)

Defense counsel was not ineffective—there was simply no substantial evidence to support giving CALCRIM No. 522. Unarmed, Ron was walking back to his hotel room with Britney when Gallegos sprinted "[o]ut of nowhere" and stabbed him. Britney "didn't understand why" her brother was angry with Ron and did not know "what was wrong with him."

On appeal, Gallegos asserts the jury could have found he was provoked because Britney testified the two men squared up, as if preparing to fight. But Ron took a fighting stance only in response to Gallegos's sudden and unprovoked assault. There is no evidence that Ron did anything provocative—except stand there.

Because Gallegos did not testify, there was no direct evidence of his subjective state of mind. The only testimony about what happened came from Britney. If the jury disbelieved her, it would have found Gallegos not guilty. If they did believe her, the evidence viewed in the light most favorable to the defense was that Ron turned, faced Gallegos, and stood there. Because there was no interaction between the two men in the moments leading up to the stabbing, there was no evidentiary basis for the jury to find that Ron engaged in any provocative conduct. The stark and disturbing reality of this case is that Ron's skin color and his choice of girlfriend was, for Gallegos, all the provocation he needed to kill. As a matter of law, that does not reduce first degree to second degree murder.

Moreover, although defense counsel did not argue subjective provocation, he did not abandon any argument in support of second degree murder. To the contrary, he told the jury that Gallegos could not have premeditated and deliberated because he smoked methamphetamine before walking to the market and the stabbing "occurred within seconds." We cannot conclude that choosing this strategy was deficient. In a case where the defendant chose not to testify and thus there was no direct evidence of his subjective state of mind, it was well within defense counsel's discretion to focus the jury on Gallegos's intoxication and the speed with which the killing occurred.

Moreover, even assuming for the sake of discussion that the omission fell below professional norms, Gallegos could not have been prejudiced by the failure to request CALCRIM No. 522. In establishing ineffective assistance of counsel, "[a] defendant must prove prejudice that is a ' "demonstrable reality" not simply speculation.' [Citations.] Prejudice requires 'a reasonable probability that a more favorable outcome would have resulted . . . , i.e., a

7

probability sufficient to undermine confidence in the outcome.' " (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)  Therefore, our inquiry is whether it is reasonably probable that the jury would have convicted Gallegos of second degree murder, rather than first degree murder, if it had been instructed with CALCRIM No. 522.

Pertinent to this issue, the court instructed the jury with CALCRIM No. 521 which states in part:

> "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately and with premeditation.  The defendant acted *willfully* if he intended to kill.  The defendant acted *deliberately* if he carefully weighed the consideration for and against his choice and knowing the consequences decided to kill.  The defendant acted with *premeditation* if he decided to kill before completing the act that caused death. . . . [¶]

> "A decision to kill made rashly, impulsively or without careful consideration is not deliberate and premeditated."

Thus, defense counsel's failure to request CALCRIM No. 522 did not prevent him from arguing—consistent with instructions that were given—that Gallegos was not guilty of first degree murder because he acted impulsively and rashly.  Indeed, counsel made this very argument in closing, telling the jury: "the killing[ ] occurred impulsively, rashly, and without careful consideration" and "[t]he rashness, the impulsiveness of this act together with the use of methamphetamine undermines [the] People's burden of proving beyond a reasonable doubt that there was ever premeditation and deliberation to support a conviction of first degree murder."  Thus, although the jury was not specifically told that provocation can be considered in making that determination, it was also not limited in the evidence it could consider concerning the lack of premeditation and deliberation.

8

Moreover, in finding Gallegos guilty of first degree murder, the jury necessarily found that his decision to kill was not rash or impulsive but carefully considered. If jurors believed he was so provoked that he could not deliberate or premeditate, they would not have found him guilty of first degree murder. It is not reasonably probable that one or more jurors would have found Gallegos not guilty of first degree murder had they also been specifically instructed that subjectively unreasonable provocation could be considered in making that determination.

B.   *The Court Did Not Err by Giving CALCRIM No. 370 (Motive)*

Gallegos was charged by information with a single count of murder. Pertinent here, the trial court instructed the jury with CALCRIM No. 370 as follows:

> "The People are not required to prove that the defendant had a motive to commit the crime charged. In reaching your verdict you may, however, consider whether the defendant had a motive. [¶]

> "Having a motive may be a factor tending to show that the defendant is guilty or an allegation is true. Not having a motive may be a factor tending to show the defendant is not guilty or an allegation is not true."

The information also alleged that Gallegos committed murder in violation of section 422.75, subdivision (a), which provides for an additional prison term for a "hate crime." For these purposes, a "hate crime" is a "criminal act committed, in whole or in part" because of the victim's actual or perceived "[r]ace or ethnicity."

The trial court instructed the jury with CALCRIM No. 1354, in relevant part as follows:

> "Special Allegation 3
> 1354. Hate Crime Allegation: Felony
> (Pen. Code, § 422.75(a)–(c))

9

"If you find the defendant guilty of the crime charged in Count One, you must then decide whether the People have proved the additional allegation that the crime committed by the defendant was a hate crime. [¶]

"To prove this allegation the People must prove that the defendant committed that crime in whole or in part because of the alleged victim's actual or perceived race or ethnicity. [¶] . . . [¶]

If you find that the defendant had more than one reason to commit the alleged acts, the bias described here must have been a substantial motivating factor."

Gallegos contends the true finding on the hate-crime enhancement must be reversed because the trial court gave "conflicting" instructions on an essential element—i.e., motive. According to Gallegos, CALCRIM No. 370 informs that the People are not required to prove motive, but CALCRIM No. 1354 instructs that motive is an essential element. Citing *People v. Valenti* (2016) 243 Cal.App.4th 1140 (*Valenti*), he asserts that where, as here, motivation is an element of an enhancement, the trial court "must not give an unmodified version of CALCRIM No. 370."[4]

In *People v. Snow* (2003) 30 Cal.4th 43 (*Snow*), however, the Supreme Court rejected a similar claim.[5] The defendant in that case claimed it was error to give CALJIC No. 2.51, which provided that "motive 'is not an element of the crime charged and need not be shown.' " (*Snow*, at p. 97.) He asserted

---

[4] Although this issue was not presented in the trial court, it presents an issue of law involving Gallegos's substantial rights and is, therefore, reviewable under section 1259 ("The appellate court may . . . review any instructions given, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby.").

[5] The Attorney General's brief cites *Snow*; however, Gallegos's reply brief does not cite or discuss it.

10

this was inconsistent with a special-circumstance instruction (CALJIC No. 8.81.10) requiring a finding that the victim was " 'intentionally killed for the purpose of preventing [the victim's] testimony in a criminal proceeding.' " (*Snow,* at p. 98.) The Supreme Court held there was no inconsistency because CALJIC No. 2.51 referred to " 'the crime charged,' i.e., murder, and not to the special circumstance allegation." (*Snow*, at p. 98.)

Similarly here, the motive instruction (CALCRIM No. 370) referred to "a motive to commit the *crime charged*," not to a motive to establish the enhancement allegation. (*Ibid.*, italics added.) It was a correct statement of the law—motive is *not* an element of the only *crime* charged in this case, murder. But motive is an element of the hate-crime *enhancement*. An enhancement is not the same as a charged crime.[6]

This distinction between a charged crime and an enhancement explains why Gallegos's reliance on *Valenti* is not persuasive. In that case, the defendant was charged with violating section 647.6, which includes as an essential element that the defendant was "motivated by an unnatural sexual interest in a particular child or in children generally." (*Valenti, supra,* 243 Cal.App.4th at p. 1165.) The trial court instructed with both CALCRIM No. 1122, which states the prosecution must prove the defendant acted with a sexual motive, and CALCRIM No. 370, which states the prosecution does not have to prove motive. (*Valenti*, at p. 1165.) Because motive was an element

---

6    We are aware that the bench notes to CALCRIM No. 1354 direct that CALCRIM No. 370 should not be given with this instruction "because motive is an element of this crime." The best practice would be to modify an instruction on motive to explicitly state that it does not apply to enhancements requiring proof of motive. But *Snow* establishes that it is not error to omit such language.

11

of the *charged offense*, the appellate court reversed because the two instructions conflicted. (*Ibid*.)

In contrast here, there is no conflict. CALCRIM No. 370 correctly informed the jury that the "People are not required to prove that the defendant had a motive *to commit the crime charged.*" (Italics added.) CALCRIM No. 1354 correctly instructed that motive was an essential element of "the *additional allegation* that the crime committed by the defendant was a hate crime." That instruction was entitled, "Special Allegation 3" and "Hate Crime Allegation." The two instructions are not inconsistent. One clearly pertains to proof of the substantive crime charged; the other clearly pertains to the hate crime allegation. Because we review jury instructions as a whole, rather than in isolation, there is no reasonable likelihood the jury would have misunderstood the instructions and as a result would have concluded, as Gallegos contends, that the prosecutor was not required to prove defendant's motive to find the hate crime allegation true.

C. *The Trial Court Correctly Determined Certain Documents Were Not Discoverable*

Before trial, while Gallegos was self-represented, the prosecutor provided the trial court with documents to examine in camera to determine if any of them should be divulged under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). The prosecutor told the court that he had already given copies to Gallegos's prior attorney (the public defender's office), but did not know if those lawyers had given them to Gallegos.

After reading the documents, the court asked the prosecutor if he intended to call any of the individuals mentioned to testify. He assured the court that he would not "at any time during this trial call these individuals, reference these individuals, reference any type of statements, and use it in

any form or fashion."[7]  Accordingly, the issue became whether the material was "exculpatory evidence, which would also be included under *Brady*."  (See § 1054.1, subd. (e).)

After reading the materials, the trial court determined "there is nothing in there that's exculpatory.  It's completely inculpatory . . . . and therefore not discoverable."  It ordered the documents sealed and "preserve[d]" for the Court of Appeal.

On appeal, Gallegos asks, and the Attorney General agrees, that this court should independently review the documents to determine whether the trial court correctly determined they do not contain any material that was required to be disclosed to the defense.

The sealed record on appeal consists of 39 photocopied pages, four of which contain partially illegible handwriting, apparently due to poor copy quality.  On the partially illegible pages, we can discern most of the words, but some sentences contain words that we cannot read.

We have reviewed the 35 legible pages and they do not contain exculpatory information.  At our request, the San Bernardino Superior Court transmitted to this court the actual documents viewed by the trial judge.  Those documents, also photocopies, are identical to what appears in the record on appeal.

We have carefully studied the partially illegible pages to determine if there is even a remote possibility that they contain exculpatory material.  We are confident they do not.  The illegible pages are part of a handwritten document.  The first page is entirely legible and, therefore, provides context

---

7    By statute, the prosecution is obligated to provide the defense with the names, addresses, and recorded statements of any witnesses it intends to call at trial.  (See § 1054.1, subds. (a) and (f).)

to the remainder. In the remaining pages, there is one word, or sometimes a few that we cannot make out. We cannot say with 100 percent certainty what the illegible word(s) are, but from the discernable words in those sentences, we can conclude beyond a reasonable doubt that the document is not exculpatory.

## DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:

IRION, Acting P. J.

DO, J.

14