Filed 7/21/22  P. v. Childers CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089184 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE005883) |
| v. | OPINION ON TRANSFER |
| JOSHUA ANTHONY CHILDERS, | |
| Defendant and Appellant. | |

A jury found defendant Joshua Anthony Childers guilty of first degree murder and found true the allegation that he personally and intentionally discharged a firearm causing death (Pen. Code, § 12022.53, subd. (d)).[1]

The court imposed a total term of 50 years to life:  25 years to life for first degree murder and a consecutive term of 25 years to life for the firearm enhancement.

---

[1] Undesignated statutory references are to the Penal Code.

1

On appeal, defendant asserts: (1) the trial court erred by not instructing the jury on the meaning of "provocation" in the context of second degree murder; (2) his trial counsel rendered ineffective assistance by failing to object or request a pinpoint instruction; and (3) this case must be remanded because the court was unaware of its discretion to strike the section 12022.53, subdivision (d) enhancement, and impose a different, uncharged enhancement within the same section (§ 12022.53, subds. (b) or (c)). In our prior unpublished opinion, we affirmed the judgment.

Defendant petitioned our Supreme Court for review. The Supreme Court granted review and deferred the matter pending consideration and disposition of related issues in *People v. Tirado*, S257658, or pending further order of the court.

On April 27, 2022, the Supreme Court transferred the matter back to this court, with directions to vacate our decision and reconsider the cause in light of *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*). We vacated our opinion on May 3, 2022. The parties have filed supplemental briefs. After considering *Tirado*, we reiterate that remand on the issue would be futile, and we will again affirm the judgment.

## I. DISCUSSION

### A. *Provocation*

#### 1. *Jury Instructions*

The jury was instructed with CALCRIM No. 520 that murder requires malice, and that if the jury decided defendant committed murder, it was second degree murder unless the People proved beyond a reasonable doubt that the murder was first degree murder as set forth in CALCRIM No. 521.

CALCRIM No. 521 instructed the jury that defendant was guilty of first degree murder if he acted "willfully, deliberately, and with premeditation." The jury was instructed that "defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill;" and that premeditation means a decision to kill before commission of the act that caused death.

2

Further, "[t]he amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premediated." The instruction concludes by again explaining that the People have the burden of proving beyond a reasonable doubt that the murder is first degree; otherwise, the murder is second degree.

The court also instructed the jury with CALCRIM No. 522, on provocation: "Provocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. Also, consider the provocation in deciding whether the defendant committed murder or manslaughter."

The jury was also instructed on voluntary manslaughter based on heat of passion as a lesser included offense to murder with a modified version of CALCRIM No. 570. The jury was instructed based on CALCRIM No. 570 that a killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed because of a sudden quarrel or in the heat of passion; that the defendant killed because of a sudden quarrel or in the heat of passion if: (1) the defendant was "provoked;" (2) "[a]s a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment;" and (3) "[t]he provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment." The jury was also instructed that "[h]eat of passion is a mental state that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter. Heat of passion arises if, at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would

3

cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment." **2**

The jury was then further instructed with CALCRIM No. 570 that:

"It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment.

"If enough time passed between the provocation and the killing for an ordinary person of average disposition to 'cool off' and regain his or her clear reasoning and judgment, then the killing is not reduced to voluntary manslaughter on this basis.

"The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as the result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of murder."

    2.    *No Sua Sponte Duty*

Defendant claims the court had a duty to instruct the jury sua sponte on the meaning of "provocation" in the context of second degree murder. Specifically, he asserts the court should have explained that: (1) provocation can negate deliberation and premeditation; (2) provocation is assessed using a subjective standard; (3) provocation may be physical or verbal; and (4) once there is evidence of provocation, the prosecution has the burden of proving the absence of provocation beyond a reasonable doubt. Additionally, defendant argues that because the jurors were (properly) instructed that the provocation necessary to reduce a killing from murder to voluntary manslaughter must be sufficient to provoke a person of average disposition, the jury was misled into applying the same reasonable person standard to the provocation that reduces a killing to second

_____

**2** The trial court inserted this paragraph based on the prosecution's request.

4

degree murder. We conclude the court had no sua sponte duty to further define provocation.

"The trial court has a sua sponte duty to instruct the jury on the general principles of law relevant to the issues raised by the evidence. [Citation.] This sua sponte duty encompasses instructions on lesser included offenses that are supported by the evidence. [Citation.] Additionally, even if the court has no sua sponte duty to instruct on a particular legal point, when it does choose to instruct, it must do so correctly. [Citation.] Once the trial court adequately instructs the jury on the law, it has no duty to give clarifying or amplifying instructions absent a request. [Citation.] [¶] In reviewing a claim that the court's instructions were incorrect or misleading, we inquire whether there is a reasonable likelihood the jury understood the instructions as asserted by the defendant. [Citation.] We consider the instructions as a whole and assume the jurors are intelligent persons capable of understanding and correlating all the instructions." (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1331-1332 (*Hernandez*).)

As defendant points out, the provocation necessary to reduce first degree murder to second degree murder is based on a subjective standard. "To reduce a murder to second degree murder, premeditation and deliberation may be negated by heat of passion arising from provocation. [Citation.] If the provocation would not cause an average person to experience deadly passion but it precludes the defendant from subjectively deliberating or premeditating, the crime is second degree murder." (*Hernandez, supra*, 183 Cal.App.4th at p. 1332.) In contrast, the provocation necessary to reduce any murder to voluntary manslaughter requires more. "For that, an objective test also applies: the provocation must be so great that, in the words of CALCRIM No. 570, it 'would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.' " (*People v. Jones* (2014) 223 Cal.App.4th 995, 1000-1001 (*Jones*).)

5

In *Jones*, *supra*, 223 Cal.App.4th 995, the jury was also instructed with CALCRIM Nos. 520, 521, 522, and 570. (*Jones, supra*, at p. 999.) The defendant "argue[d] that these pattern instructions were likely to have misled the jury into concluding that the objective test applies both for reduction of first to second degree murder as well as from murder to manslaughter." (*Id.* at p. 1001.) The *Jones* court rejected this argument because these instructions "are correct. They accurately inform the jury what is required for first degree murder, and that if the defendant's action was in fact the result of provocation, that level of crime was not committed. CALCRIM Nos. 521 and 522, taken together, informed jurors that 'provocation (the arousal of emotions) can give rise to a rash, impulsive decision, and this in turn shows no premeditation and deliberation.' [Citation.] As the jury also was instructed, a reduction of murder to voluntary manslaughter requires more. It is here, and only here, that the jury is instructed that provocation alone is not enough for the reduction; the provocation must be sufficient to cause a person of average disposition in the same situation, knowing the same facts, to have reacted from passion rather than judgment." (*Ibid.*)

We agree with the *Jones* court that the instructions correctly set forth the law. The jury was sufficiently and accurately instructed on provocation and the People's burden of proof. (See also *Hernandez, supra*, 183 Cal.App.4th at p. 1334 ["We are satisfied that, even without express instruction, the jurors understood that the existence of provocation can support the absence of premeditation and deliberation"].) The jury was further instructed to "[p]ay careful attention to all of the[ ] instructions and consider them together" (CALCRIM No. 200), and we assume the jury followed all of the court's instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 431.) Reading the instructions as a whole, it is not reasonably likely that the jury believed it could only find provocation sufficient preclude premeditation and deliberation for first degree murder if it found the provocation was also sufficient to reduce the crime to voluntary manslaughter. The instructions clearly conveyed the separateness of these inquiries.

To the extent defendant asserts the trial court should have further instructed on the type of provocation sufficient to preclude premeditation and deliberation, it appears settled that he is arguing for a pinpoint instruction that does not need to be given sua sponte. (See *People v. Hardy* (2018) 5 Cal.5th 56, 99 ["Instructions on provocation are pinpoint instructions that need not be given sua sponte but only on request"]; *People v. Rogers* (2006) 39 Cal.4th 826, 878-879 ["Because CALJIC No. 8.73 relates the evidence of provocation to the specific legal issue of premeditation and deliberation, it is a 'pinpoint instruction' "]; *Jones, supra*, 223 Cal.App.4th at p. 1001 [instruction that objective test does not apply to reduction of degree of murder is a pinpoint instruction]; *Hernandez, supra*, 183 CalApp.4th at p. 1333 ["instruction on provocation for second degree murder is a pinpoint instruction"].) This is no less true of an instruction that verbal provocation can be sufficient than of an instruction that provocation that does not meet an objective standard can be sufficient. Defendant nonetheless contends the term "provocation" for purposes of negating premeditation and deliberation has a technical meaning peculiar to the law, and therefore should have been defined sua sponte by the trial court. Not so. "A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning." (*People v. Estrada* (1995) 11 Cal.4th 568, 574.) "Provocation means 'something that provokes, arouses, or stimulates'; provoke means 'to arouse to a feeling or action[;] . . . to incite to anger.' " (*Hernandez, supra*, at p. 1334.) As used in the instructions in the instant case, "provocation" "bore [its] common meaning, which required no further explanation in the absence of a specific request." (*People v. Cole* (2004) 33 Cal.4th 1158, 1217-1218; see also *Hernandez, supra*, at p. 1334.) We reject defendant's assertion of instructional error.

### 3. *No Ineffective Assistance of Counsel*

Defendant argues alternatively that his trial counsel rendered ineffective assistance by failing to object to CALCRIM No. 522 or request a pinpoint instruction.

To prevail on such claims, defendant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. [Citation.] Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)

At trial, defendant's counsel made the tactical decision to focus the jury on the lesser included offenses of voluntary and involuntary manslaughter and argue that the prosecution had not established either first or second degree murder. Defendant has not shown his counsel acted improperly by refusing to propose an additional jury instruction that would detract from these options and highlight instead the possibility of a second degree murder verdict that he was arguing did not apply, especially since the court's jury instructions were already legally correct. (See *Jones, supra*, 223 Cal.App.4th at p. 1002 [no deficient performance where counsel chose to focus on theory of mistaken identity rather than provocation]; see also *People v. Castillo* (1997) 16 Cal.4th 1009, 1015 [no deficient performance where court's jury instructions "fully apprised the jury of the law"].) Defendant has not established his counsel rendered ineffective assistance.

B.     *Firearm Enhancement*

At sentencing, the court declined to strike the firearm enhancement. In his opening brief, defendant argued the case must be remanded because the trial court was unaware of its discretion to strike the section 12022.53, subdivision (d) enhancement and impose a different, uncharged enhancement within the same section (§ 12022.53, subds.

8

(b) or (c)).**3** In our previous decision, we noted there was a split of authority on whether a court could do so and sided with those authorities that concluded the court could not. In *Tirado*, *supra*, 12 Cal.5th 688, our Supreme Court reached the opposite conclusion. (*Id.* at p. 692.) Nonetheless, *Tirado* does not change the outcome of defendant's argument because we still conclude any remand would be unnecessary in this case.

" ' "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Flores* (2020) 9 Cal.5th 371, 431-432.)

The record here clearly indicates the trial court would have reached the same conclusion even if it had been informed it could impose a lesser yet uncharged included enhancement that was never presented to the jury. At sentencing, the court described the crime as a "monstrous, horrific act" and said, "there is only really one just sentence." The court acknowledged its discretion to decline to impose sentence on the gun enhancement, but announced that: "I am going to use my discretion to impose the full 25 years to life consecutive to the term I just imposed for first[]degree murder, for a total of 50 years to life" and added that defendant would "receive the maximum term allowed by law, which is 50 years to life." On this record, we determine the trial court intended that defendant receive the "full" term for the enhancement and the "maximum term allowed

---

**3** As defendant describes it, "the prosecutor only charged a section 12022.53, subdivision (d) gun enhancement, although it did refer to the other subdivisions, and the jury was instructed on only the greatest section 12022.53 gun enhancement for the murder count."

by law" for the murder and that remand would be futile. Defendant has not persuaded us otherwise. Likewise, to the extent defendant argues on transfer that we should also determine the trial court had the ability to strike the section 12022.53, subdivision (d) enhancement and replace it with a section 12022.5, subdivision (a) enhancement, we conclude that, even assuming this is true and such an argument was not forfeited by the failure to raise it earlier, any remand would be futile.

## II.  DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

HOCH, J.