Filed 11/20/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061346 |
| v. | (Super. Ct. No. 20CF0791) |
| GUSTAVO NUNEZ, JR., et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from judgments of the Superior Court of Orange County, Kimberly Menninger, Judge. Affirmed in part, reversed in part, and remanded.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant Gustavo Nunez, Jr.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant Daniel Gallegos.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　\*　　　\*

After hearing a rumor that Cesar Gonzalez had raped a child, and after being encouraged by a close friend to exact revenge, appellants Daniel Gallegos and Gustavo Nunez, Jr., chased Gonzalez and beat him with metal pipes as he lay on the ground.  Gallegos then stabbed Gonzalez six times in the back, killing him.  A jury convicted Gallegos of first degree murder, and Nunez of assault with a deadly weapon.

Gallegos argues the trial court erred when, in response to a jury question during deliberations, it instructed the jury that in order for provocation to reduce first degree murder to second degree murder, the provocation must come from the victim, not a third party.  We find no reversible error.  As a matter of first impression, we conclude the court's instruction was correct.  In any event, any potential error was harmless in light of the overwhelming evidence that the murder was premeditated, deliberate, and willful.

Gallegos and Nunez also both contend the trial court erred when it declined to dismiss their prior strike convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), and then sentenced them under the Three Strikes law.  We find no abuse of discretion in the court's ruling on Gallegos's motion and therefore affirm the judgment as to him.  As for Nunez, however, the record indicates the court was unaware of the scope of its sentencing discretion; we therefore remand the matter so the court may exercise its informed discretion as to whether to dismiss Nunez's prior strikes.  The judgment is otherwise affirmed.

## FACTS

In March 2020, Gallegos and Nunez were living in a vacant office building in Santa Ana with several other homeless people, including Lisa Herrera (known as

Pebbles) and Jose Loera. Gallegos and Pebbles were friends, and Nunez considered Pebbles to be his "street mom."

A rumor began circulating among the people who lived in the office building that another homeless individual, Cesar Gonzalez, had raped a child. For months, Pebbles told Gallegos that something had to be done about Gonzalez.

Loera warned Gonzalez about the rumor. Loera also told Gallegos the rumor was untrue. Gallegos replied he did not believe the rumor, but still felt pressure from others to harm Gonzalez.

On March 21, 2020, Pebbles told Gallegos that Gonzalez had raped a girl and that Gallegos should "beat his ass" and "fuck him up." Loera pulled Gallegos aside, repeated his belief that the rumor was false, and urged Gallegos not to do anything foolish because he would lose his freedom. According to Loera, Gallegos appeared "sad" and replied that he didn't have any other option.

About four hours later, after dark, Gallegos received a phone call and told the caller "'I'm on my way'"; Gallegos then left the office building with Nunez. Both men were carrying metal pipes. Loera ran after them. As Gallegos and Nunez searched the area for Gonzalez, Gallegos spoke on his cell phone with Pebbles, who told him to "'go fuck him up.'"

When Gallegos and Nunez eventually found Gonzalez, they attacked him. After trying unsuccessfully to run away, Gonzalez curled up on the ground; Gallegos, Nunez, and several others beat and punched him repeatedly while Loera watched. Pebbles was nearby, yelling things like, "'Fuck him up,'" and "'Beat the crap out of him.'"

Gallegos left for a moment; he then returned with a large knife that he regularly carried and asked Loera for "'a sharper knife so I can finish the fucker.'" Loera later saw Gallegos pass the knife to Pebbles.

3

Police officers arrived at the scene, and Gonzalez was transported to a hospital where he died. He had suffered six stab wounds to his back, fractured ribs, a collapsed lung, a fracture to his left eye orbital, and incised wounds to his head, face, and hands.

A jury found Gallegos guilty of the first degree murder (Pen. Code,[1] § 187, subd. (a)), and Nunez guilty of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury also found Gallegos had personally used a knife in the commission of the murder (§ 12022, subd. (b)(1)).

In a bifurcated proceeding, the trial court found Gallegos and Nunez had suffered prior "strike" convictions under the Three Strikes law, and it denied their *Romero* motions to dismiss the prior strikes. The court then sentenced Gallegos to 50 years to life and Nunez to 25 years to life. Both men filed notices of appeal.

## DISCUSSION

1.    *The Jury Question on Provocation*

Gallegos's first argument concerns the trial court's response to a jury question regarding the concept of provocation. Before addressing Gallegos's arguments, we provide a bit of background on the legal concept of provocation.

"First degree murder is an unlawful killing with malice aforethought, premeditation, and deliberation"; "[s]econd degree murder is an unlawful killing with malice, but without . . . premeditation or deliberation"; and voluntary manslaughter is an unlawful intentional killing without malice, premeditation, or deliberation. (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1332 (*Hernandez*).)

Provocation may preclude a defendant from subjectively premeditating and deliberating and, as a result, may reduce a murder from first degree to second degree.

---

[1]    All further statutory references are to this code.

4

(*Hernandez*, *supra*, 183 Cal.App.4th at p. 1332.)  Likewise, if provocation would cause a reasonable person to react with deadly passion so as to negate the existence of malice, the crime may be reduced from murder to voluntary manslaughter.  (*Ibid*.)  It is well settled in the latter instance that the provocation must come from the victim, not a third party, but no court has determined whether the same is true in the former instance.

In this case, Gallegos was charged with first degree murder, and the trial court instructed the jury that the People must prove he acted willfully, deliberately, and with premeditation for him to be guilty of first degree murder (CALCRIM No. 521).  The jury was also given CALCRIM No. 522 regarding provocation:  "Provocation may reduce a murder from first degree to second degree.  The weight and significance of the provocation, if any, are for you to decide.  [¶]  If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder."  This instruction does not indicate *who* must do the provoking.

During deliberations, the jury submitted a question regarding CALCRIM No. 522:  "Does the provocation need to come from [the] victim or can a third party provoke this crime?"  After researching the issue, the trial court instructed the jury that provocation "cannot be from a third party.  It must be from the victim."  The jury thereafter convicted Gallegos of first degree murder.

Gallegos argues the trial court's response to the jury question was erroneous.  According to Gallegos, unlike *objective* provocation by a victim, which negates malice, *subjective* provocation that negates premeditation and deliberation can originate from anywhere or anyone, not just from the victim.  Gallegos argues the incorrect instruction was prejudicial because, if the jury had been properly instructed, Pebbles's provocation could have reduced his crime from first degree murder to second degree murder.

5

The trial court has a duty to provide the jury with accurate information in response to a jury request on a question of law. (*People v. Smithey* (1999) 20 Cal.4th 936, 985; § 1138.) If the court gives a supplemental instruction, we review the instruction's legal accuracy de novo. (*People v. Franklin* (2018) 21 Cal.App.5th 881, 887 & fn. 4.) An incorrect supplemental instruction does not warrant reversal unless prejudice is shown. (*See id.* at pp. 890-891 [noting conflict among courts about what standard of prejudice applies].)

After considering the issue de novo, we find no error in the trial court's response to the jury question. It is well settled (and Gallegos rightly concedes) that to reduce second degree murder to manslaughter, provocation must be caused *by the victim*, not a third party. (*People v. Moye* (2009) 47 Cal.4th 537, 549-550 ["The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim"]; *People v. Avila* (2009) 46 Cal.4th 680, 705 [to reduce murder to manslaughter, the victim must taunt the defendant or otherwise initiate the provocation]; see *People v. Verdugo* (2010) 50 Cal.4th 263, 294 [refusing to revisit the "settled principle" that provocation must be caused by the victim].)

These cases and their progeny deal with negating the element of malice so as to reduce murder to manslaughter. As best we can tell, no published opinion has resolved whether the rule is the same—i.e., whether the provocation must be caused by the victim—to negate the elements of deliberation and premeditation so as to reduce first degree murder to second degree murder.[2]

---

[2] Gallegos asserts the issue was addressed in *People v. Steele* (2002) 27 Cal.4th 1230, 1253, where the Supreme Court found that "Defendant's evidence that he was intoxicated, that he suffered various mental deficiencies, that he had a psychological dysfunction due to traumatic experiences in the Vietnam War, and that he just 'snapped' when he heard the helicopter, may have satisfied the subjective element of heat of passion." Gallegos extrapolates the issue before us: that subjective provocation

We see no reason a different rule should apply in this situation. The concepts of deliberation and premeditation focus on the victim. The perpetrator must premeditate the killing of *a particular victim* in a deliberate manner, as established through evidence of planning, motive, or the manner of killing. (See *People v. Anderson* (1968) 70 Cal.2d 15, 26-27.) To mitigate those elements, it must be the *victim*, not a third party, who instigates the provocation. Accordingly, the trial court correctly instructed the jury on this issue.

In any event, even if the instruction was erroneous, it was harmless here in light of the overwhelming evidence presented at trial that the murder was willful, premeditated, and deliberate. Gallegos expressed an intent to harm Gonzalez four hours before the killing. Several hours later, after receiving a phone call, he said "'I'm on my way.'" He then armed himself, actively searched for the victim while armed with a metal pipe, chased him down, and brutally attacked him as he lay in a fetal position. On this record, the conclusion is inescapable that Gallegos acted with premeditation and deliberation.

2.     *The* Romero *Motions*

Gallegos and Nunez next contend the trial court abused its discretion in denying their *Romero* motions to dismiss the prior strike allegations and in sentencing them both under the Three Strikes law. We agree as to Nunez; as to Gallegos, we are not persuaded.

The Three Strikes law is designed to increase the prison terms for repeat felons. (See §§ 667, subds. (b)-(i), 1170.12.) When a defendant is convicted of a felony, and it is pleaded and proved he had committed prior "violent" or "serious" felonies, the

---

may be caused by people or events other than the victim. We disagree because the court in *Steele* was discussing instructions on the heat of passion requirement for manslaughter. (*Id.* at p. 1252.) It did not address whether provocation to reduce first degree murder to second degree murder must come from the victim.

Three Strikes law provides for the imposition of increased sentences. (See § 667, subd. (e); § 1170.12.) A trial court is presumed to have acted properly whenever it sentences a defendant in accordance with the Three Strikes law. (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).) A sentencing court nonetheless has the power to dismiss one or more prior strike convictions in the interests of justice. (*Romero*, *supra*, 13 Cal.4th at pp. 529–532.)

In deciding whether to exercise its discretion to dismiss a prior strike conviction in the interests of justice, a trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [sentencing] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) The court may not consider factors extrinsic to the sentencing scheme, such as "the mere desire to ease court congestion or . . . bare antipathy to the consequences for any given defendant." (*Ibid.*)

We review a trial court's decision whether to strike a prior felony conviction for abuse of discretion. (*Romero, supra*, 13 Cal.4th at p. 532.) "'"[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary."'" (*Carmony*, *supra*, 33 Cal.4th at p. 376.) There is a presumption that any sentence conforming to the Three Strike law's sentencing norm is both rational and proper. (*Id.* at p. 378.) "In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances," such as "where the trial court was not 'aware of its discretion' to dismiss [a prior strike] (citation), or where the court considered impermissible factors in declining to dismiss [a prior strike]," or "where no reasonable [person] could disagree [the defendant] falls outside the spirit of the three strikes [law] scheme . . . ." (*Ibid*.)

8

a.   *Gallegos*

Gallegos contends the trial court abused its discretion in failing to strike his prior strike conviction pursuant to *Romero*.  Gallegos's criminal history began in 1990 when he was 18 years old and included a 1991 conviction for robbery, 2008 and 2015 convictions for burglary, a 2012 conviction for resisting arrest, and numerous drug related offenses.  He has been under community supervision and served five prior prison terms.

The jury in this case found Gallegos guilty of first degree murder and also found true the allegation that he personally used a knife in the commission of the murder.  Additionally, the trial court found Gallegos had a prior strike—the 1991 robbery conviction.

Gallegos moved to dismiss the prior strike, noting it occurred 31 years earlier on his 18th birthday, and asserting that sentencing him under the Three Strikes law would be the functional equivalent of a "death in prison" sentence given his age (49).  In opposition, the People argued that although the strike conviction was remote in time, Gallegos's conduct in the instant matter demonstrated he was violent and dangerous and a poor candidate for release back into society.

At the sentencing hearing, the trial court recognized Gallegos's strike conviction was "old," but reasoned that "even a 1991 strike is relevant when it comes to someone who has committed murder."  The court also emphasized Gallegos did not "own" his behavior or demonstrate any remorse for his crimes.  Gallegos asked the court how he could have remorse for something he did not do, to which the court responded that the jury had concluded otherwise, and the court had considered the evidence in support of that verdict.  The court then denied Gallegos's *Romero* motion and sentenced him to a Three Strike term of 50 years to life.

We discern no abuse of discretion in the trial court's decision.  Gallegos targeted, searched for, beat, and stabbed his victim to death, all based on a rumor.  The

9

fact that Gallegos's strike conviction occurred in 1990 when he was only 18 years old does not compel a different result. In determining whether a prior conviction is remote, the trial court must evaluate whether the defendant has had a "crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) If the "defendant has led a continuous life of crime after the prior, there has been no 'washing out' and there is simply nothing mitigating about a [decades]-old prior." (*Ibid.*)

Such was the case with Gallegos. He suffered 30 convictions since the 1990 strike.[3] While most of these convictions were for drug related crimes, "*Williams* and its progeny do not hold that a defendant's criminal career must consist entirely or principally of violent or serious felonies to bring a defendant within the spirit of the Three Strikes law." (*People v. Strong* (2001) 87 Cal.App.4th 328, 340.) In this case, though not necessarily increasing in severity, the convictions were certainly numerous. (See Cal. Rules of Court, rule 4.421(b)(2) [circumstances in aggravation include that "the defendant's prior convictions . . . are numerous or of increasing seriousness"].) The record reflects Gallegos has been committing crimes for over three decades, and his criminality has not been deterred by prior periods of incarceration or release on community supervision.

Gallegos alternatively contends the trial court abused its discretion by erroneously considering his lack of remorse as dispositive to its ruling. We disagree. In deciding whether to strike a prior felony conviction, a court must consider factors that are intrinsic to the Three Strikes law's sentencing scheme, including the defendant's "background, character, and prospects," but it may not consider factors extrinsic to the

---

[3]     Gallegos suggests the trial court did not consider his criminal history because it did not discuss it at the hearing. But the court indicated it had reviewed the parties' briefing, the probation report, and the sentencing report, which detailed his criminal history.

scheme, like "the mere desire to ease court congestion or . . . bare antipathy to the consequences for any given defendant." (*Williams, supra*, 17 Cal.4th at p. 161.) In this case, it appears the court considered Gallegos's lack of remorse as relevant to his character, future prospects, and improbability of rehabilitation, not as a result of any sort of antipathy toward Gallegos. The court *also* considered the severity of the crime ("yes [the strike] is old[,] . . . [b]ut the problem is this is murder") and Gallegos's criminal history (as confirmed by the court's comments that it read the parties' briefing, probation report, and sentencing report). Accordingly, we cannot say the court's decision was based on any impermissible factor.

Finally, Gallegos contends the trial court's ruling violated his federal and state rights to due process. That contention also fails, as he has not shown the court violated state law in denying his *Romero* motion. (See *People v. Prince* (2007) 40 Cal.4th 1179, 1272, fn. 20.)

      b.    *Nunez*

We next consider the denial of Nunez's *Romero* motion. Nunez's criminal history began in 2007 when he was 19 years old and included a 2010 robbery, a 2015 robbery and assault, numerous drug related offenses, and a 2018 assault with a deadly weapon, during which he resisted officers and fractured one of their hands. Nunez had served four prior prison terms and was on parole at the time of Gonzalez's murder.

The trial court found Nunez had suffered two prior strikes: the 2010 conviction for robbery, and the 2019 conviction for assault with a deadly weapon. Nunez moved to strike "at least one" of those prior convictions under *Romero*, asserting most of his arrests were due to drug addiction and homelessness, and at least one of the strike priors was over 10 years old. The People opposed his motion, arguing Nunez's criminal history demonstrated a "pattern of criminal behavior and a continued escalation in violence."

11

In considering Nunez's *Romero* motion, the trial court commented that a sentence "close to 20 [years] would have been perfect." The court lamented, however, that it could not "get there anymore because of the new sentencing laws," and noted it could either sentence Nunez to 25 years to life under the Three Strikes law, or a maximum determinate term of 14 years if a strike were stricken. Finding that 14 years was "not appropriate" given the severity of what occurred, the court decided to sentence Nunez to a Three Strikes term of 25 years to life. It also reasoned that Nunez's crimes "have been ratcheting up in severity from the time he was young until now," he was on parole at the time of the instant crime, and although Nunez was not the murderer, "the murder was facilitated through his activity" because Nunez incapacitated the victim.[4]

Nunez contends the trial court misunderstood the scope of its discretion at sentencing, as reflected by the court's comments that it could sentence Nunez to at most 14 years (i.e., the low term of two years doubled, plus 10 years for two prior serious felony enhancements) if it did not impose the strikes. We agree.

As the People concede, the trial court was incorrect when it stated it was required to impose the low term if Nunez was given a determinate term. Effective January 2022, former section 1170, subdivision (b), was amended to establish a presumption that, absent certain circumstances, the middle term is appropriate. Thus, the court was not required to impose a low term if Nunez was given a determinate term; it could have instead imposed either a middle or upper term determinate sentence for a term of either 16 or 18 years. It is not clear how the court would have ruled on Nunez's

---

[4]     Nunez contends substantial evidence does not support the trial court's finding that he "incapacitat[ed]" the victim. We disagree. Loera testified that Nunez and Gallegos both repeatedly beat Gonzalez with metal pipes as he tried to run away, and they continued to hit him as he lay on the ground. This supports the court's finding that Nunez's actions incapacitated Gonzalez and enabled Gallegos to stab him.

*Romero* motion had it been aware of the scope of its discretion.  This is particularly true given its comments that a sentence of "close to 20 [years] would have been perfect."

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [remand appropriate because the record did not clearly indicate the court would have imposed the same sentence had it been aware of the full scope of its discretion after a change in the law].)

Because the trial court might have granted Nunez's *Romero* motion had it been aware of the actual scope of its discretion, we must vacate Nunez's sentence and remand this matter so the court may conduct a new *Romero* hearing.  We express no view on how the court should exercise its discretion on remand.

## DISPOSITION

The convictions are affirmed.  The matter is remanded to the trial court for a new *Romero* hearing as to Nunez so that the court may exercise its informed discretion as to whether to dismiss one or both of Nunez's prior strikes.  On remand, the court may also, in its sound discretion, modify any aspect of Nunez's sentence in order to achieve its sentencing objectives.  The judgment as to Nunez is otherwise affirmed.  After Nunez's resentencing, the court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

The judgment as to Gallegos is affirmed.

13

GOETHALS, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.